**In re Louis KALMAR and Marylou Kalmar, Debtors.**

**Martin and Sandi STANSHINE, Plaintiffs,**

**v.**

**Louis KALMAR and Marylou Kalmar, Defendants.**

**Bankruptcy No. 81–02842G. Adv. No. 81–1044K.**

United States Bankruptcy Court, E. D. Pennsylvania.

March 16, 1982.

Martin Stanshine, Philadelphia, Pa., for plaintiffs.

Leo F. Doyle, Philadelphia, Pa., trustee.

Richard J. Lyons, Warminster, Pa., for defendants debtors.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Presently before the Court is a complaint brought by the plaintiffs to except from discharge a debt arising out of a transaction where money was advanced to the debtors pursuant to a construction contract. The Court finds that this debt is dischargeable in bankruptcy and the complaint will be denied.[1]

On October 22, 1980, plaintiffs, Martin and Sandi Stanshine, executed a written agreement with the debtor, Louis Kalmar, for the latter to construct a fireplace at the plaintiffs' residence. The contract provided that the total price was to be $1,700.00. Of this amount, $1,200.00 was advanced to the debtors for the purchase of materials including sand, cement, and cinder blocks. The remainder of the contract price was to be paid upon completion of the project.

The debtor appeared several times to work on the fireplace. A hole was dug outside the home to provide a foundation for the chimney. The cement foundation was poured and a cinder block wall erected. Thereafter, a large opening was chipped through the stucco exterior of the home.[2] At this time, the debtor discontinued work on the project.

Plaintiffs contacted the debtor to determine when construction would be resumed. Upon realizing that the debtor was unwilling or unable to complete the contract, the plaintiffs obtained a default judgment in state court against the debtor in the amount of the advance on April 21, 1981. On July 21, 1981, the debtors filed a petition under Chapter 13 of the Bankruptcy Code. The case was subsequently converted to Chapter 7.

Plaintiffs filed two (2) complaints on August 12, 1981. One sought to determine dischargeability of the debt and the other requested relief from the stay to collect on the judgment. An initial hearing was held on September 9, 1981. Because the two (2) complaints were identical in both law and fact, the Court Ordered that they be consolidated on September 30, 1981. An initial hearing was held on September 9, 1981. After consolidation of the complaints and consideration of a motion for summary judgment, the trial was completed on February 10, 1982.

The plaintiffs argue that the $1,200.00 debt arising out of the construction advance should be excepted from discharge pursuant to section 523(a)(4) of the Code. Section 523(a) provides:

(a) a discharge under Section 727, 1141, or 1328(b) of the title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or *larceny.*

11 U.S.C. § 523(a)(4) (emphasis added). Plaintiffs aver that the term *larceny,* as found in section 523(a)(4) of the Code, is defined with reference to applicable state law. Specifically, plaintiffs direct our attention to Section 3927 of the Pennsylvania Crimes Code which provides as follows:

### Theft by failure to make required disposition of funds

(a) Offense defined.—A person who obtains property upon agreement or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The debtor expended approximately $800.00 of the $1,200.00 advance for the purchase of sand, cement, cinder blocks and for labor costs.

In addition, the plaintiffs introduced three (3) photographs of the partially completed fireplace which effectively corroborates the debtor's testimony with respect to the amount of work actually done on the project.

identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 *Pa.Cons.Stat.Ann.* § 3927 (Purdon).[3]

In *Commonwealth v. Crafton*, 240 Pa.Super. 12, 367 A.2d 1092 (1976), the Superior Court of Pennsylvania first outlined the four (4) requirements necessary under section 3927. They are:

(1) The obtaining of property of another;

(2) Subject to an agreement of known legal obligation upon the recipient to make specified payments or other disposition thereof;

(3) Intentional dealing with the property obtained as the defendant's own; and

(4) Failure to make the required disposition of the property. 240 Pa.Super. at 16, 367 A.2d at 1094.

*See, Commonwealth v. Shapiro*, 275 Pa.Super. 28, 418 A.2d 594 (1980); *Commonwealth v. Austin*, 258 Pa.Super. 461, 393 A.2d 36 (1978); *Commonwealth v. Bhojwani*, 242 Pa.Super. 406, 364 A.2d 335 (1976).

In *Austin, supra*, the defendant was a construction contractor who received an advance of $2,495.00 for the purchase of materials and for labor. Work was begun on the project. Approximately half of the advanced funds were actually spent on materials and labor before the contractor discontinued work. Charges were brought against him under § 3927 of the Pennsylvania Crimes Code. The Superior Court reversed a conviction, holding that with respect to the first element of § 3927, the acceptance of advance money on a construction contract was not accepting property of another. *Austin*, 285 Pa.Super. at 461, 393 A.2d at 38.

In addition, in *Commonwealth v. Bartello*, 225 Pa.Super. 277, 301 A.2d 885 (1973), a conviction for fraudulent conversion was reversed on the grounds that there was only a civil breach of contract where money had been advanced under the terms of a construction contract but the project was not completed. In *Bartello, supra*, the Court stated:

"It seems apparent that in a single contract providing for certain services at certain prices that where there is a transfer of money, within the contract price, even in advance of the due date, that title as well as possession passes and only a contractual obligation remains." 225 Pa.Super. at 280, 301 A.2d at 887.

In the case *sub judice*, the debtor received money on a construction contract. Ownership of the funds passed to the debtor when the funds were transferred. He could not, therefore, fraudulently convert his own property. *Austin*, 285 Pa.Super. at 461, 393 A.2d at 38; *Bartelli*, 225 Pa.Super. at 277, 301 A.2d at 885; *Commonwealth v. Yocum*, 211 Pa.Super. 17, 234 A.2d 43 (1967). The debtor's only duty was to perform the services under the contract. Failure to so perform was a breach of the contract. The failure gives rise to a claim for breach of contract, however, it does not amount to theft by failure to make the required disposition of funds.

Further, one of the plaintiffs in this case is a lawyer who should be fully cognizant of the protective devices available to guard against a potential loss involved in a credit transaction; some of which devices are: 1) purchase by the owner/creditor of all materials and supplies by the owner with the agreement that the owner shall supply the same; 2) the establishment by the owner/creditor of a credit account for the supply of materials in an amount certain for the specific job involved; 3) provision for an escrow account to allow the contractor to draw upon the account only by the consent of the owner/creditor. The list of alternatives is only as extensive as the ingenuity of the person who desires to protect himself, and as limited as the person desires to forego risk of loss or simply hopes that no problem will ensue after a carefully and

---

**3.** This section is new to Pennsylvania law and is derived from Section 223.8 of the Model Penal Code, replacing the fraudulent conversion section of the 1939 Penal Code, Act of June 24, 1939, P.L. 872; 18 *Pa.Cons.Stat.* § 4833 (repealed 1973).

skillfully negotiated agreement is set forth in a legally enforceable contract. The policy of the law is not designed to protect those persons who fail or refuse to protect themselves; this policy is particularly relevant where the party seeking protection is an experienced lawyer who should be fully cognizant of the legal results of his actions.

Exceptions to discharge should be narrowly construed in order to promote the policies of "fresh start" for the debt. *See Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Stewart*, 10 B.R. 214 (Bkrtcy., C.D.Cal.1981). *In re Harlan*, 7 B.C.D. 140, 7 B.R. 83 (Bkrtcy., D.Ariz.1980). In this case, a mere breach of contract must be found to be dischargeable. The debt in this case cannot be found to be barred from discharge or nearly all debts would be barred from discharge in bankruptcy.

Accordingly, the Court will enter an Order finding this debt to be dischargeable and denying the complaint.

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.