**STATE of Minnesota, Appellant,**

v.

**Julie Annette MARSHALL, Respondent.**

No. C7–95–1229.

Court of Appeals of Minnesota.

Dec. 19, 1995.

Review Denied Feb. 27, 1996.

Considered and decided by PETERSON, P.J., and KALITOWSKI and SCHUMACHER, JJ.

## OPINION

KALITOWSKI, Judge.

The State of Minnesota appeals the dismissal of theft by temporary taking charges under Minn.Stat. § 609.52, subds. 2(1), 2(5) (1994) against respondent Julie Marshall.

## FACTS

Marshall owned and operated Minnesota Intrusion Alarm, Inc. (MIA), a business that typically sold alarm system monitoring services to elderly customers for approximately $800 paid in advance. The contracts were usually four- to six-year agreements requiring MIA to provide alarm system monitoring. MIA provided no alarm monitoring itself, but paid subcontractor IDC to perform the monitoring. Between June 1, 1993, and May 31, 1994, MIA collected almost $58,000 from customers. During that same period, MIA allegedly paid over $25,000 to Marshall, over $19,000 to a new business venture of Marshall's, over $11,000 toward the mortgage on Marshall's home, and an undetermined amount of small expenditures for Marshall's benefit.

On June 1, 1994, IDC terminated services for MIA customers due to MIA's account delinquency of over $5,000. Marshall and MIA had paid only $1,500 to IDC up to that time. MIA customers who had fully prepaid for monitoring services were left without service for the remainder of the contract periods. Records indicate MIA and Marshall owed various creditors over $90,000 and had no assets to fulfill those obligations.

On September 30, 1994, Marshall and MIA, who were considered to be one and the same, were charged with ten counts of theft by swindle of over $500. Minn.Stat. § 609.52, subds. 2(4), 3(3)(a) (1992). Subsequently, the state dismissed theft by swindle charges and charged Marshall with ten counts of theft by temporary taking of over $500. Minn.Stat. § 609.52, subds. 2(1), 2(5)(a), 3(3)(a) (1992).

Hubert H. Humphrey, III, Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney, and Thomas A. Weist, Assistant County Attorney, Minneapolis, for Appellant.

William R. Kennedy, Hennepin County Public Defender, Peter W. Gorman, and Richard A. Trachy, Assistant Public Defenders, Minneapolis, for Respondent.

The district court dismissed the ten counts of theft by temporary taking for lack of probable cause. In a memorandum attached to its order, the district court explained that the state could not prove four of the seven elements of a claim of theft by temporary taking of over $500. Specifically, the court reasoned that once customers paid money in advance to Marshall, the money became Marshall's property in exchange for her contractual obligation to provide services. The court concluded that Marshall's use of the money was not a taking of the property of another and therefore she could not be properly charged with theft under Minn.Stat. § 609.52, subd. 2(1).

### ISSUE

When a businessperson accepts money for services, uses some of the money for other than business purposes, and subsequently fails to perform the services, has the businessperson taken property of another under Minn.Stat. § 609.52, subd. 2(1)?

### ANALYSIS

■ The district court dismissed the state's charges for lack of probable cause based on a legal determination that the acts alleged could not support criminal charges of theft by temporary taking. A dismissal for lack of probable cause is appealable if it is based on a legal determination. *State v. Ciurleo*, 471 N.W.2d 119, 121 (Minn.App. 1991). As with other legal determinations, it is reviewed de novo. *See State v. Diedrich*, 410 N.W.2d 20, 22–23 (Minn.App.1987). Penal statutes are strictly construed. *State v. Soto*, 378 N.W.2d 625, 627 (Minn.1985).

To prove a charge of theft by temporary taking, the state must establish, among other things, that a defendant

intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable *property of another* without the other's consent * * *.

Minn.Stat. § 609.52, subd. 2(1) (emphasis added).

In the 1963 revisions of the criminal code, the legislature did away with the former crime of embezzlement in favor of a general theft provision, thereby making it unnecessary to allege or prove a fiduciary relationship. In this case, however, the state must prove Marshall was a fiduciary of her customers in order to establish that money paid to her in advance remained "the property of another." The state must therefore establish a trust or trust-like limitation on Marshall's use of the money.

■ A debt is not a trust because it requires no fiduciary duties. *Farmers State Bank of Fosston v. Sig Ellingson & Co.*, 218 Minn. 411, 418, 16 N.W.2d 319, 323 (1944). In order to create a trust, the parties must manifestly intend that property be kept or used for the benefit of the payor. *Id.* In the absence of such a restriction, a debt is created and the payor merely has a personal claim against the debtor. *Id.*

■ The state here does not allege that Marshall and her customers agreed or intended that the particular money advanced must be used to pay IDC. Thus, upon payment Marshall became a debtor of her customers, owing them performance of promised services. Marshall's customers retained no legal or other "subordinate interest" in the payment. *See* Minn.Stat. § 609.52, subd. 1(8) (1992). Without a trust or trust-like limitation imposed by the parties as to the specific use of advance payments, we conclude the money became Marshall's upon transfer and no longer the "property of another." Marshall cannot, therefore, be properly charged with stealing her own money.

■ The state argues that unless we conclude a business that receives money in advance of services must segregate such money and treat it as if it is in a trust, businesses will be allowed to cheat customers with impunity. We disagree. To require businesses to segregate money paid by each customer and not pay salaries or other expenses until services have been provided in full would create an accounting nightmare, and be contrary to general business practices. In addition, the legislature has enacted other theft provisions, such as theft by swindle and theft by false representation, to deal with an individual or business that accepts payment for

goods or services with an intent not to perform.

Other jurisdictions with theft laws requiring that a defendant take the property of another have reached the same result. *See Crawford v. State*, 453 So.2d 1139, 1142 (Fla. Dist.Ct.App.2d 1984) (holding that once down payment changes hands, money becomes property of the contractor), *review denied*, (Fla. Nov. 19, 1984); *State v. Caslavka*, 531 N.W.2d 102, 105 (Iowa 1995) (holding that where feed store owner accepts prepayment for farm products, makes personal use of those funds, and fails to deliver products, he has not taken property of another); *People v. Christenson*, 412 Mich. 81, 312 N.W.2d 618, 621–22 (1981) (holding that building contractor who failed to use progress payments from customers to pay a manufacturer of modular homes cannot be convicted in the absence of a trust arising from an agreement to use specific funds for specific purposes); *Shelley v. State*, 447 So.2d 124, 126 (Miss.1984) (holding that even in case of "fast talk" by a contractor who is a "known crook," prepayments become the property of contractor and therefore cannot support an embezzlement conviction); *Commonwealth v. Austin*, 258 Pa.Super. 461, 393 A.2d 36, 39 (1978) (holding that advance money paid on construction contract is not "property of another"); *State v. Joy*, 121 Wash.2d 333, 851 P.2d 654, 659 (1993) (holding that defendant contractor could be convicted for theft of advance payments only where the parties agreed to use funds for the specific, stated purpose of purchasing materials, thereby creating an implied trust).

 The facts here do not require that we decide whether, in a case where parties designate a specific use for advance payments, customers retain an interest in the payment sufficient to support a theft charge. Rather, we hold that theft charges may not be prosecuted under Minn.Stat. § 609.52, subd. 2(1) where the parties fail to designate a specific use of an advance payment or a customer otherwise fails to retain an interest. Marshall's actions may be the result of poor business judgment, which is not a crime, or, indeed, they may be criminal under other provisions of law. Under these facts, however-

er, they cannot constitute theft by temporary taking.

## DECISION

Because money paid by customers became the property of respondent Julie Marshall and MIA, the district court properly dismissed theft by temporary taking charges under Minn.Stat. § 609.52, subds. 2(1), 2(5)(a), 3(3)(a).

**Affirmed.**